[Cite as *In re J.T.*, 2016-Ohio-602.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE:   J.T.

                                 :

                                 :

                                 :      C.A. CASE NO. 26839

                                 :

                                 :      T.C. NO. 2014-7957

                                 :

                                 :      (Civil appeal from Common

                                 :       Pleas Court, Juvenile Division)

                                 :

                                 :

                                 :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the _____19th_____ day of _____February_____, 2016.

. . . . . . . . . . .

MICHELE D. PHIPPS, Atty, Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Appellee Montgomery County Children's Services

JAMES S. ARMSTRONG, Atty. Reg. No. 0020638, 131 N. Ludlow Street, Suite 386 Talbott Tower, Dayton, Ohio 45402
      Attorney for Appellee Father

CHRISTOPHER A. DEAL, Atty. Reg. No. 0078510, 2541 Shiloh Springs Road, Dayton, Ohio 45426
      Attorney for Appellant Mother

. . . . . . . . . . . . .

DONOVAN, P.J.

    **{¶ 1}** Defendant-appellant T.T. (hereinafter "Mother") appeals a decision of the

Montgomery County Court of Common Pleas, Juvenile Division, which adopted the

magistrate's decision awarding temporary custody of J.T. to plaintiff-appellee D.T. (hereinafter "Father").

{¶ 2} The magistrate's decision awarding Father legal custody of J.T. was issued on April 17, 2015. On August 13, 2015, the trial court issued its judgment adopting the decision of the magistrate. Mother filed a timely notice of appeal with this Court on September 11, 2015.

{¶ 3} On September 7, 2014, at approximately 9:16 p.m., Officer Jerome Klemmensen of the Moraine Police Department responded to a domestic violence complaint involving J.T. and Mother at the trailer park where they lived together. Upon his arrival, Officer Klemmensen stood outside Mother's trailer for a moment before announcing his presence. Officer Klemmensen testified that he heard crying and yelling as he stood outside. Specifically, Officer Klemmensen testified that he heard J.T. say, "Why are you always hitting me?" Officer Klemmensen testified that he heard Mother respond, "Shut up, bitch." Officer Klemmensen then knocked on the door. J.T. answered the door and let him inside. Officer Klemmensen described the conditions inside the trailer as "horrible" and a "fire hazard." Officer Klemmensen testified that the trailer was filled with debris and furniture, and entry into some of the rooms was blocked with boxes and trash. J.T. was thirteen years old at this time.

{¶ 4} Officer Klemmensen informed Mother that there had been a complaint of domestic violence that he had been sent to investigate. Officer Klemmensen testified that Mother ordered him to get out of her trailer. Mother also told Officer Klemmensen that there was no problem and that J.T. was lying. Officer Klemmensen took J.T. outside the trailer and asked her what happened. J.T. informed Officer Klemmensen that Mother

had slapped her in the face and tried to spray her with pepper spray. Upon investigation, Officer Klemmensen discovered pepper spray inside the trailer. Mother was subsequently arrested for domestic violence, and J.T. was placed in the temporary custody of her father, D.T. Officer Klemmensen testified that he contacted Montgomery County Children's Services (MCCS) regarding J.T. and the poor condition of the trailer in which she was living.

{¶ 5} Shortly thereafter, MCCS Caseworker Melanie Hennessey visited Mother at her trailer. Hennessey testified that the interior of the trailer was very cluttered with trash and furniture and there was very little space in which to move. Hennessey further testified that upon inspection, the kitchen was so cluttered that no one could prepare food in that area of the trailer. Hennessey testified that Mother informed her that she wanted J.T. to come back to her home. Hennessey told Mother that she had to improve the condition of her trailer before J.T. would be allowed to move back in with her. Hennessey also testified that Mother was completely against J.T. living with Father.

{¶ 6} Hennessey returned to Mother's trailer approximately a week later on September 26, 2014. Hennessey noted that Mother had removed a significant amount of the debris and furniture from the trailer. As a result, Hennessey testified that the trailer was in a livable condition. During the second visit, Hennessey also suggested that Mother and J.T. begin attending a Parent-Teen Conflict Program in order to address their difficulties with each other. Initially, Mother seemed receptive to attending the program so Hennessey made a referral for them. Based on Hennessey's positive report, J.T. was permitted to return to Mother's trailer.

{¶ 7} In early October, 2014, Hennessey returned to Mother's trailer again to check

on any progress that had been made. Hennessey testified that the trailer was starting to become cluttered again, and it was becoming difficult to move around because of objects blocking walkways. During this visit, Hennessey testified that she was able to speak with J.T. alone outside the presence of Mother. J.T. told Hennessey that she and Mother argued constantly, and Mother called her names. J.T. also stated that Mother had slapped her that day before Hennessey arrived. J.T. further stated Mother kept her up at night and would not allow her to finish her homework. J.T. stated that Mother had her constantly doing chores and helping around the trailer. J.T. told Hennessey that as a result, her performance in school was suffering. J.T. informed Hennessey that she did not want to live with Mother anymore and that she preferred to live with Father. Hennessey concluded the visit, and J.T. remained at Mother's trailer.

{¶ 8} On October 20, 2014, Moraine Police Officer John Howard was dispatched to a Wal-Mart store at 1701 West Dorothy Lane in Moraine, Ohio, in order to investigate a shoplifting complaint. Upon his arrival at the store, Officer Howard spoke with a loss prevention employee who stated that she witnessed Mother, who was accompanied by J.T., shoplifting store merchandise. The theft was also recorded by video surveillance inside the store. In addition to capturing the theft, the video depicted Mother and J.T. arguing as they tried to leave the store. Officer Howard testified that J.T. told him that they were arguing because Mother had asked her to carry some of the stolen merchandise out of the store, but J.T. had refused. Mother was subsequently arrested for shoplifting and child endangering. The police contacted Father, and J.T. was released into his custody. J.T. remained in Father's temporary custody for only a few days. Upon her release from jail, Mother regained custody of J.T., and the two returned

to Mother's trailer.

**{¶ 9}** In November of 2014, MCCS arranged a meeting in order to discuss placement options for J.T. with Mother and Father. Hennessey attempted to discuss issues with respect to the cleanliness of Mother's home and the constant arguing between J.T. and Mother. Hennessey also attempted to get Mother to sign a safety plan that would allow J.T. to live with Father or another appropriate person until Mother chose to address her personal issues. Mother, however, became angry and blamed Father for all of the problems surrounding J.T. Mother refused to sign the safety plan and left the meeting, taking J.T. with her.

**{¶ 10}** Thereafter, on December 10, 2014, MCCS filed a dependency complaint for J.T. with alternative dispositions of protective supervision to MCCS or temporary custody to Mother's sister, A.C. On March 2, 2015, Father filed a motion for alternative disposition of temporary custody of J.T. In the alternative, Father requested that temporary custody of J.T. be granted to A.C.

**{¶ 11}** The first half of an adjudicatory hearing was held before a magistrate on March 3, 2015. At the conclusion of the hearing, the magistrate adjudicated J.T. as a dependent child and placed her in the temporary custody of Father, with interim protective supervision granted to MCCS. The magistrate also ordered that a guardian ad litem (GAL) and an attorney be appointed to represent J.T. The adjudicatory hearing was resumed on April 7, 2015. Mother was present in the courthouse, but she refused to enter the courtroom and participate in the proceedings. Mother's counsel informed the magistrate that the attorney-client relationship had broken down, and she asked for a continuance. The magistrate denied the motion for continuance, and the hearing was

resumed. At the conclusion of the hearing, the GAL made an oral recommendation that J.T. remain in the temporary custody of Father. The GAL also stated that J.T. did not want to begin visitation with Mother right away. The magistrate took the matter under advisement.

{¶ 12} On April 17, 2015, the magistrate issued a decision in which it ordered that Father be granted temporary custody of J.T., with protective supervision to MCCS. The magistrate also ordered that Mother receive supervised visitation in accordance with the recommendations of J.T.'s therapist. Mother filed a general objection to the magistrate's decision on April 29, 2015. On July 23, 2015, Mother filed supplemental objections to the magistrate's decision. On August 12, 2015, Father filed his response to Mother's supplemental objections. One day later on August 13, 2015, the trial court adopted the magistrate's decision in its entirety, and J.T. remained in the temporary custody of Father.

{¶ 13} It is from this decision that Mother now appeals.

{¶ 14} Mother's sole assignment of error is as follows:

{¶ 15} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED THE OBJECTIONS TO THE MAGISTRATE'S DECISION BY FAILING TO PROPERLY CONSIDER THE MANDATORY FACTORS, AND BY FAILING TO CONDUCT AN INDEPENDENT REVIEW OF THE RECORD."

{¶ 16} In her first assignment, Mother contends that the trial court abused its discretion by failing to properly consider all of the relevant statutory factors before granting temporary custody of J.T. to Father. Specifically, Mother argues that the trial court did not consider all of the factors in R.C. 3109.04(F) when determining it was in J.T.'s best interest to be placed in the custody of Father. Mother also asserts that the trial court

abused its discretion when it found that her visitation with J.T. should be denied until the child's therapist deemed it appropriate.   We note that Mother has failed to preserve any challenge to the adjudication of J.T. as dependent, and she has not argued that the adjudication was plain error.

{¶ 17} When a juvenile court rules on objections to a magistrate's decision, "the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Juv.R. 40(D)(4)(d).   R.C. 2151.23(F)(1) provides that the "juvenile court shall exercise its jurisdiction in child custody matters in accordance" with section R.C. 3109.04, which authorizes domestic relations courts to allocate parental rights and responsibilities for the care of minor children.   We review the juvenile court's decision for an abuse of discretion. *In re A.K.,* 2d Dist. Champaign No. 09–CA–32, 2010–Ohio–2913, ¶ 22.

{¶ 18} " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.   A decision is unreasonable if there is no sound reasoning process that would support that decision.   It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result."   *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**Best-Interest Analysis**

{¶ 19} A juvenile court has broad discretion in the disposition of an abused,

neglected, or dependent child. *See* R.C. 2151.353(A) and Juv. R. 29(D). The dispositional options include, among other things, granting a children-services agency temporary custody, committing the child to the permanent custody of a children-services agency, or awarding legal custody to a relative or any other person. R.C. 2151.353(A). "In choosing among the alternatives, the best interest of the child is the court's primary consideration." *In re L.C.,* 2d Dist. Clark No. 2010 CA 90, 2011-Ohio-2066, ¶ 13.

{¶ 20} Where an award of custody is supported by substantial competent, credible evidence in the record, that award will not be reversed as being against the manifest weight of the evidence. *Davis v. Flickinger,* 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶ 21} R.C. 3109.04(F)(1) provides a non-exclusive list of factors to consider when determining the best interest of a child. Those factors are as follows:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 22} On appeal, Mother argues that the trial court failed to consider several of the factors in R.C. 3109.04(F)(1) when it awarded temporary custody of J.T. to Father. Specifically, Mother asserts that the record establishes that the trial court ignored R.C. 3109.04(F)(1)(c), (d), (e), (g), and (h). Mother's assertions in this regard are not supported by the record.

{¶ 23} Significantly, Hennessey testified that J.T. is very calm and relaxed with Father. Hennessey testified that J.T. and Father converse well together and joke around with each other. Unlike at Mother's house, there is no yelling or name-calling when J.T. and Father are together. The record establishes that J.T. and Father possess a positive bond with one another, and Father has stated his willingness to take custody of her. *See* R.C. 3109.04(F)(1)(a).

**{¶ 24}** Moreover, the record establishes that J.T. is comfortable around Father's live-in girlfriend. Hennessey testified that she witnessed J.T and Father's girlfriend positively interact with each another without any tension or stress. Hennessey testified that J.T. has a good relationship with her paternal grandmother who is often present at Father's house. J.T. reported to Hennessey that she also gets along with the other children living in Father's house. Hennessey testified that she observed J.T. interact with the other children, everyone was "fine." *See* R.C. 3109.04(F)(1)(c).

**{¶ 25}** At the time of the hearing on April 7, 2015, J.T. had resided in Father's home for approximately one month. Hennessey testified that based upon her observations, J.T. had adjusted very well to living in Father's house. Hennessey testified that she performed an inspection of Father's house and found it to be safe, clean, and well-maintained. J.T. shares a room with another child, but she has her own bed in which to sleep.

**{¶ 26}** Additionally, Hennessey testified that J.T. was also showing significant improvement in school since the move. When J.T. was living with Mother, her school attendance was sporadic, and when she did go to school, she was often late. Hennessey testified that while she was living with Mother, J.T. would miss several consecutive days of school, thereby resulting in poor grades. J.T. also reported that she had trouble doing her homework because Mother would often interrupt her and make her perform chores and clean the trailer. J.T. also informed Hennessey that Mother would often wake her up in the middle of the night to perform chores around the trailer. Hennessey testified that Mother's trailer was "extremely cluttered" and not a "healthy environment for a child [J.T.]'s age."

{¶ 27} Conversely, since moving into Father's home, J.T.'s school attendance is up and her grades have markedly improved. Hennessey testified that she noticed an improvement in J.T.'s overall attitude. In fact, Hennessey testified that J.T. seems happier, friendlier, and is getting along well with the other students at school. *See* R.C. 3109.04(F)(1)(d).

{¶ 28} No evidence was adduced that any member of Father's household suffered from any type of physical or mental problems. *See* R.C. 3109.04(F)(1)(e). Mother, however, informed Hennessey that she suffers from bipolar issues, severe depression, and anxiety. Mother reported that she was taking multiple prescribed medications to treat her conditions. Mother reported that she was taking Effexor, Xanax, and Vicodin. Mother stated that she was prescribed the medications by her family physician and was not in any therapy or other treatment for mental health conditions. Mother reported that she had substance abuse issues in the past.

{¶ 29} Father reported that while he had substance abuse issues in the past, he was currently attending a weekly meeting to help reinforce his sobriety. Moreover, Father completed a rehabilitation program at NOVA House on March 17, 2015. Father was regularly drug-tested while at NOVA House, and he always tested negative.

{¶ 30} Mother also argues that Father has a child support arrearage, but has reported several different figures. *See* R.C. 3109.04(F)(1)(g). Hennessey testified that if an arrearage does exist, she was unable to discover the amount. Mother reported that she was not receiving child support from Father, but Hennessey testified that she had seen Father's pay stubs which indicated that child support for J.T. was being deducted from his pay.

{¶ 31} Finally, Mother argues that the trial court failed to consider evidence that Father committed a sexually oriented offense. *See* R.C. 3109.04(F)(1)(h). Specifically, Mother reported to Hennessy that Father impregnated a fourteen year old girl several years ago. Hennessey testified that she performed a search of the Ohio Statewide Automated Child Welfare Information System (SACWIS) and also did a criminal history check on Father but found no sexual abuse cases related to him. Hennessey testified that Father has no convictions for sexual offenses. Hennessey did testify that she received a report of a minor giving birth to a child whose legal father was identified as appellee. However, other than Mother's insistence that the minor girl was fourteen, there is no evidence in the record to support this allegation or the year it occurred.

{¶ 32} Mother also argues that the trial court failed to consider her report that Father was mentally and physically abusive to her while they were married. Mother further asserts that the trial court ignored the fact that Father has a criminal history, namely that he had been convicted of misdemeanor assault offense involving another woman. Hennessey testified that Father had successfully completed probation or community control for the assault conviction. Hennessey also testified that Father had been incarcerated a few years back for a drug-related conviction and was on federal parole at the time of the hearing. The record establishes that the trial court considered Father's entire criminal record before awarding him custody of J.T. Moreover, there have never been any accusations that Father has mistreated or been abusive towards J.T. Conversely, Mother has been convicted for domestic violence against J.T. Mother also attempted to coerce J.T. into shoplifting clothing items from Wal-Mart. J.T. reported to Hennessey that Mother regularly slapped her and called her names. Mother failed to

provide a suitable home for J.T. While Father has had his own troubles, the record establishes that he is making a strong effort to provide a stable home for J.T. and have a positive impact in her life.

{¶ 33} A court must make its custody decision in accordance with the best interests of the child. *In re G.F.*, 2d Dist. Montgomery No. 24193, 2011-Ohio-1823, ¶ 16. The trial court concluded, based upon the evidence presented, that it was in J.T.'s best interest to award temporary custody of her to Father. In addition to the testimony presented at the hearing that we have already discussed, we note that the guardian ad litem filed a detailed report in this case recommending temporary custody be awarded to Father. Upon review, we conclude that the record contains substantial competent, credible evidence supporting the trial court's decision finding the award of temporary custody to Father to be in J.T.'s best interests.

### Mother's Visitation

{¶ 34} Mother also argues that the trial court abused its discretion when it ordered that Mother could not have visitation with J.T. until her therapist deemed it appropriate. Specifically, Mother asserts that this was error because the therapist did not testify nor submit a report. Mother also points out that no evidence was submitted regarding the therapist's qualifications.

{¶ 35} We will not reverse a trial court's decision on a motion for modification of visitation rights absent an abuse of discretion. *Quint v. Lomakoski*, 167 Ohio App.3d 124, 2006-Ohio-3041, 854 N.E.2d 225, ¶ 12 (2d Dist.). When applying the abuse of discretion standard of review, we must not substitute our judgment for that of the trial court. *In re Jane Doe I*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991). We must

presume the findings of the trial court are correct because the trial judge is best able to observe the witnesses and use those observations in weighing the credibility of the testimony. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984). "A reviewing court will presume that the trial court considered relevant statutory factors in the absence of evidence to the contrary." *Minoughan v. Minoughan,* 2d Dist. Montgomery No. 18089, 2000 WL 799737, *2 (June 23, 2000).

{¶ 36} R.C. 3109.051(D) lists several factors that a trial court must consider when determining parenting time matters, including the prior interaction and interrelationships of the child and his parents; the location of each parent's residence; the child and parents' available time; the child's age; the child's adjustment to home, school and community; the child's wishes; the health and safety of the child; the mental and physical health of all parties; each parent's willingness to facilitate the other parent's rights to parenting time; whether either parent has continuously and willfully denied the other parent's parenting time rights; whether either parent has established or plans to establish an out-of-state residence; and any other factor in the best interest of the child. The trial court must apply the factors and determine the parenting time plan that is in the child's best interest. *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999).

{¶ 37} As previously discussed, Mother and J.T. had a very strained and volatile relationship. Mother has been convicted for domestic violence against J.T. Mother attempted to coerce J.T. into shoplifting clothing items from Wal-Mart. J.T. reported to Hennessey that Mother regularly slapped her and called her names. Mother failed to provide a suitable home for J.T. J.T. told Hennessey that she and Mother argued constantly when they live together. J.T. stated that she did not want any visitation or

further contact with Mother.

{¶ 38} Hennessey testified that Mother blames J.T. "for a lot of things." Hennessey suggested that any visitation between J.T. and Mother be supervised to insure that the interaction is appropriate. The GAL informed the trial court that any visitation between Mother and J.T. should be supervised by a counselor until their relationship improves.

{¶ 39} The evidence adduced at the hearing establishes that since J.T. began living with Father, her grades and school attendance have significantly improved. In fact, the evidence establishes that J.T.'s entire outlook on life has become better. Accordingly, the trial court's order that Mother cannot have visitation with J.T. until her therapist deems such contact appropriate is supported by competent, credible evidence and was not an abuse of discretion.

**Child Support Order**

{¶ 40} Lastly, Mother argues that it was error for the trial court to order her to pay Father child support in the amount of $50.00 per month. Mother also contends that the trial court erred when it awarded Father the dependency exemption for J.T. for tax purposes.

{¶ 41} A "trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *Johnson v. McConnell,* 2d Dist. Montgomery No. 24115, 2010–Ohio–5900, ¶ 13. When modifying a child support order, a trial court must follow the procedures set forth in R.C. 3119.022. The Ohio Supreme Court "has required strict compliance with the statutory procedures for an initial award or modification of

a child support order. The trial court must include the worksheet in the record so that an appellate court can meaningfully review the trial court's order." *Johnson* at ¶ 14, internal citations omitted. "Generally, the amount of child support that would be payable under a child support order, as calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due. R.C. 3119.03." *Id.,* at ¶ 15.

{¶ 42} In the instant case, the trial court ordered Mother to pay $50.00 per month in child support to Father. Although she initially challenged the amount of the child support award in her brief, Mother failed to provide any further argument regarding how the trial court abused its discretion by ordering her to pay the statutory minimum amount. *See* R.C. 3119.06. Accordingly, Mother has failed to establish that the child support award was erroneous. We also note that the trial court did not make any determination regarding which parent was entitled to J.T.'s dependency exemption. Thus, Mother's argument in this regard is without merit.

{¶ 43} Mother's sole assignment of error is overruled.

{¶ 44} Mother's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Michele D. Phipps
James S. Armstrong
Christopher A. Deal
Hon. Nick Kuntz