[Cite as *In re A.A.R.*, 2022-Ohio-93.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | |
|---|---|
| IN RE: A.A.R., M.R.R. & C.W.R. | : |
| | : |
| | :    Appellate Case No. 2021-CA-23 |
| | : |
| | :    Trial Court Case Nos. 2020-C-00098- |
| | :    01, 2020-C-00099-01, 2020-C-00100- |
| | :    01 |
| | : |
| | :    (Appeal from Common Pleas Court- |
| | :    Juvenile Division) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of January, 2022.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
      Attorney for Appellee, Greene County Children Services

SAMANTHA L. BERKHOFER, Atty. Reg. No. 0087370, 202 North Limestone Street, Suite 250, Springfield, Ohio 45503
      Attorney for Appellant, Mother

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Mother appeals from the trial court's judgment entries overruling her objections to a magistrate's adjudicatory and dispositional decisions and granting appellee Greene County Children Services (GCCS) temporary custody of each of her three children.

{¶ 2} Mother contends the evidence does not support a finding that she engaged in illicit drug use and, therefore, that the magistrate and the trial court erred in finding the children dependent and granting GCCS temporary custody. For the reasons to follow, we conclude that the evidence does establish illicit drug use by both Mother and Father. The record also supports the dependency adjudications and dispositions of temporary custody to GCCS. Accordingly, the trial court's judgments will be affirmed.

## I. Factual and Procedural Background

{¶ 3} Mother and Father are married and have three young children. GCCS became involved with the family in the spring of 2020 following suicidal threats by Father and concerns about drug use. At that time, Mother and Father had two children. Before a protective-supervision hearing could be completed, Mother gave birth to a third child in July 2020. Shortly thereafter, on August 11, 2020, an unsecured door in the marital home fell on this child, causing a head injury. While investigating the incident, police found drug paraphernalia in the home. Father admitted that it was his. Mother underwent a drug screen the day of the accident. It came back positive for amphetamine and methamphetamine. Father admitted using drugs and refused a drug screen, stating that it would be positive. GCCS obtained interim custody, and all three children were placed in foster care.

{¶ 4} The children were adjudicated dependent on September 10, 2020. In its decision finding the children dependent, a magistrate noted the accident involving the youngest child, the discovery of drug paraphernalia in the home, Father's admission that the paraphernalia belonged to him, and Father's refusal to submit to a drug screen. Case plans for Mother and Father were established providing for drug and alcohol assessments, mental-health screening, and random drug testing. About a week before a scheduled November 4, 2020 dispositional hearing before a magistrate, Mother and Father underwent a 10-panel hair follicle test. Both parents tested positive for amphetamine and methamphetamine.

{¶ 5} Prior to the dispositional hearing, GCCS moved for temporary custody, primarily based on concerns about continued drug use and untreated mental-health issues. During the hearing, Father denied recent drug use. He claimed not to have used any illegal drugs since February 2020, when he had "relapsed" and used what he described as "probably methamphetamine." He also admitted telling the GCCS caseworker that he had used illegal drugs consistently between March 2020 and August 2020—an admission confirmed by the caseworker in her own testimony. When confronted with his positive hair-follicle test, Father responded that "medication I'm on could test positive." Father identified the medication he was taking as Adderall. Although he previously had admitted that the drug paraphernalia in the house was his, he speculated that it could have been left by a prior resident. He also acknowledged, however, that it could have been his.

{¶ 6} For her part, Mother testified that she was taking a prescription drug called Adipex at the time of her August 11, 2020 positive test. She also used an Albuterol inhaler.

Mother testified as to her "understanding" that Adipex and the inhaler both could produce false positive results for amphetamine and methamphetamine "depending on the way your body breaks it down." Mother also denied any knowledge of drug paraphernalia being in her home and expressed her intent to continue residing with Father, her husband, regardless of any drug usage by him.

{¶ 7} Finally, the guardian ad litem testified and recommended returning the children to Mother and Father with an order of protective supervision while they worked on their case plans. The guardian ad litem opined that Mother and Father were able to care for the children. The guardian ad litem expressed no concerns about Mother and Father working on their cases plans while having custody of the children. In reaching her conclusion, the guardian ad litem testified that she believed Mother and Father were not using illegal drugs. With regard to Father's refusal of a drug test on August 11, 2020, the guardian ad litem suggested that he was "just upset."

{¶ 8} On cross-examination, the guardian ad litem denied knowing that Father had tested positive for methamphetamine. She expressed her belief that Adderall use can produce a positive test result for amphetamine. She did not know whether this was true for methamphetamine. As for Mother's drug use, the guardian ad litem initially admitted knowing that Mother had tested positive for methamphetamine and failing to include that fact in her report. The guardian ad litem then suggested that she may not have known about Mother's positive methamphetamine test. She also testified as to her belief that Mother's prescription Apidex use could produce a positive test for amphetamine but not methamphetamine. Notably, the guardian ad litem agreed that the children should not reside with Mother and Father "if in fact there is Methamphetamine use in the home[.]"

The guardian ad litem explained that her recommendation to reunite the children with Mother and Father was based on her understanding that the parents were only using "legal drugs."

{¶ 9} At the conclusion of the hearing, the magistrate took the matter under advisement while giving Mother and Father an opportunity to submit prescriptions for any drugs that they believed might have produced positive test results for methamphetamine. In so doing, the magistrate reasoned:

> The central issue of this entire hearing is whether or not the parents have used illegal substances. And they would like for me to believe that they have not[.] I would like to believe that they have not. The issue can simply be resolved with presenting a script for the medication that the parents have alleged contains the Methamphetamine that somehow showed in their system.
>
> * * *
>
> Based on the numbers that came back [from the hair-follicle test], Father's numbers were off the chain. Based on my experience, what that indicates is far more current use than Father is admitting. Maybe it is the prescription, problem is I don't have a script. I don't have a bottle. * * *

(November 4, 2020 Hearing Tr. at 169-170.)

{¶ 10} The magistrate subsequently filed a November 9, 2020 decision granting GCCS temporary custody of the children. As relevant here, the magistrate reasoned:

> 6. The Court further finds that the primary issue of concern for the Agency is the parents' denial of illegal substance usage, to wit: methamphetamine.

Father admitted to drug use in August but now states that he relapsed in February 2020 and has not used since then. The agency tested mother in August and mother tested positive for methamphetamine. The parents and the Agency agreed to a hair follicle test paid for by the Agency. The test indicated both parents [were] positive for methamphetamine. Mother's quantitation results were 7,815 pg/mg and father's quantitation results were 58,529 pg/mg. The confirm cutoff for the test was 100 pg/mg.

7. The Court further finds that the parents indicated that they were on prescription medications that would cause a false positive. Mother stated that she was on Apidex, Albuterol inhaler, and Belviq. Father indicated that he was on Adderall. The Court offered the parents the opportunity to submit the prescription bottles or the prescriptions. Mother submitted a list of prescriptions none of which demonstrated a prescription for Apidex, Albuterol inhaler, nor Belviq. Father provided a prescription from Arizona for a 30-day supply of Ampheta-Dextro combo, 20 mg that was written and filled in 2018. The quantity was 90 count for a 30-day supply, indicating three times a day, not prn (as needed) as he testified.

8. The Court further finds that the parents stated they were having a Medical Review Officer (MRO) review the prescriptions. However, there is no indication that the parents have paid to have the MRO completed.

{¶ 11} Following the magistrate's decision, the trial court permitted Mother to file cumulative supplemental objections addressing both the dependency adjudication and

the temporary-custody disposition.[1] In a May 26, 2021 ruling, the trial court overruled those objections, found all three children dependent, and upheld the award of temporary custody to GCCS. In so doing, the trial court reviewed the evidence presented at the adjudicatory hearing and reasoned:

> The Court finds that there was sufficient, competent and credible evidence to establish meet [sic] GCCS's burden of proof. The evidence was clear and convincing evidence that all (3) three children were dependent, as an unsecured door fell onto the family's infant child, C.R., injuring him. As a result of this horrific accident, drug paraphernalia was located in the family's home. The paraphernalia was in open sight to where the young children could have come into contact with it. While Mother denied knowledge of the paraphernalia and attempted to claim it belonged to a family friend, Father admitted it was his. Father further admitted to both caseworkers at the hospital that he had been actively using methamphetamine since the original case opened in March 2020. All of the foregoing issues raise substantial concerns for the children's condition or environment and establish grounds for GCCS intervention.

(May 26, 2021 Judgment Entry at 6-7.)

{¶ 12} With regard to disposition, the trial court reasoned:

> The Court further finds that it is in the best interest of the children to be in the temporary custody of Green County Children Services, pending

---

[1] Mother's earlier objections to the adjudication had been stayed pending completion of the dispositional hearing. Therefore, both the dependency adjudication and the temporary-custody disposition properly were before the trial court.

the parents' substantial completion of case plan objections [sic]. The record is evident the Agency developed a case plan for the parents, with the goal of reunifying the children into their home. There are concerns for: illicit substance abuse; the parents' mental health and how they have responded to the Agency's involvement and life's everyday trials—as evidenced by the current case and the Agency's initial case with the family; and the parents' willingness and/or ability to engage in services and maintain effective communication with GCCS necessary to reunite their family.

The main concern in the home can be boiled down to illegal substance abuse in or around the presence of the children. Father admitted to using illegal drugs from March 2020 until the August 11, 2020 incident. He then testified he only relapsed in February 2020 and did not engage in further drug use. Mother tested positive for methamphetamine and amphetamine on the date C.R. was injured in their home, leading a reasonable person to believe she was under the influence when her newborn child was seriously injured by a falling door. The parents were positive for both methamphetamines and amphetamines in October 2020. Father's high levels on the hair follicle test are extremely concerning. Both parents testified to being the children's primary caregivers and providers. They have both refused to submit to drug screens for the Agency when requested and have only offered to do so at a scheduled court hearing. They were afforded an opportunity to establish that their positive tests resulted or could have resulted from their prescription medications; however, they

failed to do so. Ultimately, the testimony and evidence reflect a minimization of illicit drug use and the harmful effects that it can have on their young children.

(*Id.* at 7.)

{¶ 13} This appeal by Mother followed.

## II. Analysis

{¶ 14} Mother advances the following two assignments of error, which she briefs and argues together:

> **First Error - The failed [sic] to prove drug abuse by admitting State's Exhibit 1**
>
> **Second Error – The Magistrate erred in granting temporary custody to GCCS**

{¶ 15} Mother's appeal challenges the magistrate's and the trial court's reliance on State's Exhibit 1, which contained the results of her August 11, 2020 drug screen. Mother contends her use of prescription weight-loss drug Apidex caused her positive test result for amphetamine and methamphetamine. Mother recognizes the caseworker's testimony that Apidex can cause a positive test for amphetamine but not methamphetamine. Mother notes, however, that the caseworker was not absolutely certain about the effect of taking Apidex on a test for methamphetamine. In any event, Mother contends the caseworker was not qualified to opine about Apidex's impact on a drug test. Mother appears to argue that the trial court improperly relied on State's Exhibit 1 for purposes of both its dependency adjudication and its dispositional order.

{¶ 16} Upon review, we see no error in the trial court's adjudication of the children

as dependent or its award of temporary custody to GCCS. A "dependent child" includes one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" R.C. 2151.04(C). A dependency finding must be supported by clear and convincing evidence. *In re P.G.*, 2d Dist. Montgomery No. 22706, 2008-Ohio-4015, ¶ 11. Our review "is limited to determining whether the record contains sufficient, credible evidence to support the trial court's decision." *In re M.M.*, 2d Dist. Montgomery Nos. 27722, 27724, 2018-Ohio-2034, ¶ 11, quoting *In re P.G.* at ¶ 11.

{¶ 17} With regard to custody, "[a] court may commit a dependent child to the temporary custody of a public children services agency * * * if the court finds that this disposition is in the child's best interest." *Id.* at ¶ 25, citing R.C. 2151.353(A)(2) and *In re S.M.*, 2d Dist. Montgomery No. 24539, 2011-Ohio-6710, ¶ 3. A temporary-custody decision "must be supported by a preponderance of the evidence." *In re S.M.* at ¶ 4. Once again, our review is limited to determining whether the record contains competent, credible evidence supporting the trial court's decision. *In re J.T.*, 2d Dist. Montgomery No. 26839, 2016-Ohio-602, ¶ 33.

{¶ 18} As noted above, Mother's only argument is that the magistrate and the trial court improperly relied on State's Exhibit 1 to find her children dependent and to award GCCS temporary custody. The trial court found no error in the magistrate's admission of the August 11, 2020 drug screen results. It also noted that the magistrate had not relied on the results of that test to adjudicate the children dependent.

{¶ 19} Upon review, we see no error in the trial court's rejection of Mother's objection concerning State's Exhibit 1. At the adjudicatory hearing, Mother's attorney

challenged the admission of the exhibit. The only basis for the objection, however, was that the results of the August 11, 2020 drug screen were obtained after a dependency complaint had been filed. The trial court correctly overruled the objection. Nothing prohibited GCCS from obtaining additional evidence to support its dependency allegations after filing its complaint.

{¶ 20} We note too that the extent of the caseworker's knowledge about the impact of other medications on a drug test for methamphetamine was explored during the adjudicatory and dispositional hearings. The essence of the caseworker's testimony was that she did not believe the medications allegedly used by Mother and Father would produce a positive result on a test for methamphetamine, but she was not absolutely certain. Regardless of the caseworker's uncertainty, we see no error in the dependency adjudication.

{¶ 21} Even if we accept, purely arguendo, that Mother used certain prescription drugs (a claim she failed to substantiate by producing prescriptions after the dispositional hearing) and that those drugs caused a positive test result for methamphetamine, the record contains substantial other evidence to justify adjudicating the children dependent. Most notably, Father admitted to a caseworker on August 11, 2020 that he had been using illegal drugs and that the drug paraphernalia found inside the home belonged to him. This admission alone justified a dependency finding, particularly in light of the injury that had occurred to the parents' newborn child. In overruling Mother's objection to the admission of State's Exhibit 1, the trial correctly noted that the magistrate's dependency adjudication did not even reference Mother's August 11, 2020 test result in support of the decision.

**{¶ 22}** For much the same reason, we see no error in the dispositional order granting GCCS temporary custody. Father admitted using illegal drugs between March 2020 and August 2020. He also admitted ownership of the paraphernalia found inside the home. After August 11, 2020, Mother and Father both refused one or more random drug screens. They both tested positive for amphetamine and methamphetamine on the October 2020 hair-follicle test. Their drug levels were many times above what was required for a positive result. Although Mother blamed her positive test on prescription use of Apidex, she failed to produce that prescription, or any other potentially-relevant prescription, despite being given an opportunity to do so.

**{¶ 23}** Having reviewed the record, we see no error in the trial court's finding, by clear and convincing evidence, that the children at issue were dependent. Nor do we see any error in the trial court's finding, by the preponderance of the evidence, that granting GCCS temporary custody was in the best interest of the children.

### III. Conclusion

**{¶ 24}** Mother's two assignments of error are overruled, and the judgment of the Greene County Common Pleas Court, Juvenile Division, in each case is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.


Copies sent to:

Marcy A. Vonderwell
Samantha L. Berkhofer
John M. Leahy
Margaret Neff, GAL
Hon. Amy H. Lewis